IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| VERONICA JOHNSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NO. 2-19-CV-1047-WKW |
| ) | [WO] |
| TUTERA SENIOR LIVING d/b/a ) | |
| MONTGOMERY CHILDREN'S ) | |
| SPECIALTY CENTER, L.L.C., ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

On December 13, 2019, Veronica Johnson ("Johnson"), a black woman, filed suit against Tutera Senior Living d/b/a Montgomery Children's Specialty Center, L.L.C. ("Tutera"). (Doc. # 1.)  In her complaint, Johnson alleges that Tutera discriminated against her based on her race in violation of both 42 U.S.C. § 2000e–2 ("Title VII") and 42 U.S.C. § 1981.  Before the court is Tutera's Motion to Dismiss Plaintiff's Complaint brought pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  (Doc. # 7.)  For the reasons given below, the motion to dismiss is due to be granted in part and denied in part.

## I. JURISDICTION AND VENUE

Subject matter jurisdiction is exercised pursuant to 28 U.S.C. §§ 1331 (federal question) and 1343 (civil rights). Personal jurisdiction and venue are not contested.

## II. STANDARD OF REVIEW[1]

When evaluating a motion to dismiss pursuant to Rule 12(b)(6), the court must take the facts alleged in the complaint as true and construe them in the light most favorable to the plaintiff. *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1321–22 (11th Cir. 2012). To survive Rule 12(b)(6) scrutiny, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[F]acial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted).

---

[1] In its motion, Tutera argues that "the Court cannot exercise subject matter jurisdiction over Plaintiff's purported claims of race discrimination because Tutera was not Plaintiff's employer for purposes of Title VII . . . ." (Doc. # 7, at 1.) Despite Tutera's claims, this court's subject matter jurisdiction is not at issue. Instead, "[Tutera's] status as [Johnson's] employer is a nonjurisdictional element of her substantive cause[s] of action, and therefore, a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction is not the appropriate procedural vehicle for presenting this defense." *Kaiser v. Trofholz Techs., Inc.*, 935 F. Supp. 2d 1286, 1292 (M.D. Ala. 2013). This finding is consistent with how other district courts in this circuit have analyzed the issue. *See Linzy v. Ala. Dep't of Pub. Health*, 2:19-CV-153-MHT, 2020 WL 6205848, at *1 (M.D. Ala. Oct. 22, 2020) (analyzing the defendant's argument that it was not the plaintiff's employer under Rule 12(b)(6), not Rule 12(b)(1)); *Howell v. City of Lake Butler*, 3:17-CV-641-JRK, 2018 WL 904281, at *3 (M.D. Fla. 2018) (same); *see also Arbaugh v. Y & H Corp.*, 546 U.S. 500, 516 (2006) (holding that Title VII's employee numerosity requirement for employer status was non-jurisdictional). Accordingly, Tutera's motion is considered solely under Rule 12(b)(6).

The evaluation of a Rule 12(b)(6) motion is "limited to the face of the complaint and attachments thereto." *Starship Enters. of Atlanta, Inc. v. Coweta Cnty., Ga.*, 708 F.3d 1243, n.13 (11th Cir. 2013). Accordingly, the court has not considered the exhibits attached to either parties' briefing, and conversion under Federal Rule of Civil Procedure 12(d) is not necessary. *Harper v. Lawrence Cnty., Ala.*, 592 F.3d 1227, 1232 (11th Cir. 2010) ("A judge need not convert a motion to dismiss into a motion for summary judgment as long as he or she does not consider matters outside the pleadings.").

## III. BACKGROUND[2]

Johnson is a licensed nursing home administrator and claims that she worked for Tutera until January 30, 2018—the date of her termination. According to Johnson, Billy Clifton and Scott McBridges, managers at Tutera, unlawfully discriminated against her based on her race when they terminated her employment because she was black. Johnson asserts that Tutera's stated reason for her termination—that she was an unproductive employee—was pretextual. To support pretext, Johnson alleges, among other things, that she received pay raises from Tutera, a deficiency-free work review in 2016, and various awards for her job performance with the company. (Doc. # 1, at 2–3.) Moreover, Johnson identifies

---

[2] Applying the Rule 12(b)(6) standard, the court has presumed as true the well-pleaded factual allegations in the complaint, but not its legal conclusions.

two comparators, Heather Penny and Aaron Johnson (both of whom are white), who held the same position as she held, and contends that Tutera did not terminate their employment even though they "were in fact poor performers." (Doc. # 1, at 2.) Based on these allegations, Johnson claims that "Billy Clifton and/or Scott McBridges harbored racial animus against African American professionals." (Doc. # 1, at 3.)

On June 11, 2019, the Equal Employment Opportunity Commission ("EEOC") issued a Letter of Determination inviting Johnson and Montgomery Children's Specialty Center to participate in "informal methods of conciliation" after "finding that there [was] reason to believe violations . . . occurred." (Doc. # 1–2, at 1–2) (alteration added).) On September 18, 2019, after conciliation failed, the EEOC issued Johnson a Notice of Right to Sue. (Doc. # 1–1.) Montgomery Children's Specialty Center is the only respondent named in both documents.

## IV.  DISCUSSION

Tutera moves to dismiss Johnson's complaint in its entirety, advancing two primary arguments: (1) that it cannot be held liable under either Title VII or § 1981 because it did not employ Johnson; and (2) Johnson's Title VII claim against it should be dismissed for failure to exhaust administrative remedies. In short, Johnson has adequately pleaded an employment relationship between herself and Tutera;

4

however, she failed to exhaust her administrative remedies concerning her Title VII claim. The following discussion addresses each issue in turn.

**A.   Tutera's Status as Johnson's Employer**

Tutera asserts that Johnson "alleges no facts to establish that Tutera was doing business as Montgomery Children's Specialty Center, or even that an employment relationship existed between herself and Tutera." (Doc. # 7, at 4–5.) At this stage of the proceedings, Tutera's argument is unavailing.

"A Title VII workplace discrimination claim can only be brought by an employee against [her] employer." *Peppers v. Cobb Cnty., Ga.*, 835 F.3d 1289, 1297 (11th Cir. 2016) (citations omitted).[3] To determine "whether an entity is a qualified employer, [courts] ask[] this basic question: 'who (or which entity) is in control of the fundamental aspects of the employment relationship that gave rise to the claim.'" *Id*. (quoting *Lyes v. City of Riviera Beach*, 166 F.3d 1332, 1345 (11th Cir. 1999) (en banc)). This inquiry "requires consideration of the totality of the employment relationship." *Id*. Moreover, courts weigh two factors in analyzing whether an employment relationship existed sufficient to state an employment discrimination claim: "(1) how much control the alleged employer exerted on the employee, and

---

[3] This analysis applies with equal force to Johnson's § 1981 employment discrimination claim. *See Kolczynski v. United Space Alliance, LLC*, No. 6:04-CV-716-KRS, 2005 WL 2291706, at *5 n.5 (M.D. Fla. 2005) ("Because Section 1981 . . . claims apply the same analysis as . . . Title VII claims, an employment relationship must exist) (citing *Sledge v. Goodyear Dunlap Tires N. Am., Ltd.*, 275 F.3d 1014, 1015 n.1 (11th Cir. 2001)).

(2) whether the alleged employer had the power to hire, fire, or modify the terms and conditions of the employee's employment." *Id*. (citations omitted).

Here, Johnson alleges that Tutera, "by and through its managers," gave her pay raises, performance bonuses, and various work-related awards. (Doc. # 1, at 2–3.)  Johnson further alleges that Tutera terminated her employment with the company on January 30, 2018.  (Doc. # 1, at 2.)  These allegations, which are presumed true and construed in the light most favorable to Johnson, are enough to establish that Tutera did have sufficient control, authority, and influence over the terms of Johnson's employment.  Thus, Johnson has plausibly alleged that Tutera was her employer for the purposes of stating a claim under both Title VII and § 1981.  Of course, this finding does not prevent Tutera from reasserting its argument that it does not qualify as Johnson's employer at the summary judgement stage after the parties have had an opportunity to uncover additional facts through discovery.

**B.     Johnson's Failure to Exhaust her Administrative Remedies**

Tutera persuasively contends that the Title VII claim against it should be dismissed because Johnson did not exhaust her administrative remedies. Specifically, Tutera argues that Johnson "filed her EEOC Charge only against Montgomery Children's Specialty Center" and "did not name . . . Tutera in her Charge, let alone reference Tutera as an entity that played any role in her employment." (Doc. # 7, at 5.)

"Generally, only a party named in an EEOC charge can subsequently be charged in a lawsuit filed in court under Title VII." *Peppers*, 835 F.3d at 1298 (citation omitted); *see also* 42 U.S.C. § 2000e-5(f)(1) ("[A] civil action may be brought against the respondent named in the [EEOC] charge.") (alterations added). This general rule "serves to notify the charged party of the allegations and allows the party an opportunity to participate in conciliation and voluntarily comply with the requirements of Title VII." *Peppers*, 835 F.3d at 1298. However, "courts liberally construe this requirement and, where [Title VII's] purposes are fulfilled, a party not named in an EEOC charge may be subject to federal court jurisdiction." *Id*. To determine whether Title VII's purposes are fulfilled, thus avoiding the need to name a party in an EEOC charge, courts examine the following factors:

> (1) the similarity of interest between the named party and the unnamed party; (2) whether the plaintiff could have ascertained the identity of the unnamed party at the time the EEOC charge was filed; (3) whether the unnamed parties received adequate notice of the charges; (4) whether the unnamed parties had an adequate opportunity to participate in the reconciliation process; and (5) whether the unnamed party actually was prejudiced by its exclusion from the EEOC proceedings.

*Id*.

In the instant case, it is clear from Johnson's EEOC Notice of Right to Sue (Doc. # 1–1) and EEOC Letter of Determination (Doc. # 1–2), both of which are attached to the complaint, that Johnson did not name Tutera in her EEOC charge. These documents only name Montgomery Children's Specialty Center as the

7

respondent in the proceedings before the agency. Thus, Johnson has failed to exhaust her administrative remedies pursuant to the general rule that "only a party named in an EEOC charge can subsequently be charged in a lawsuit filed in court under Title VII." *Peppers*, 835 F.3d at 1298 (citation omitted).

Additionally, an examination of Johnson's complaint reveals that she failed to plead any facts establishing that the exception to the exhaustion requirement should apply to her case. For example, the complaint is wholly devoid of allegations demonstrating a similarity of interest between Tutera and Montgomery Children's Specialty Center; whether Johnson could have identified Tutera at the time she filed her EEOC charge; whether Tutera received adequate notice of Johnson's charges; whether Tutera had an adequate opportunity to participate in the reconciliation process; and whether Tutera was actually prejudiced by its exclusion from the EEOC proceedings. Absent such allegations, Johnson has failed to plausibly show that the purposes of Title VII have been fulfilled. *See Tuck v. Off Shore Island Marine & Oilfield Co.*, No. 12-0379-WS-M, 2013 WL 81135, at *3 (S.D. Ala. Jan. 4, 2013) (granting the defendant's motion to dismiss because the plaintiffs failed to exhaust administrative remedies as it related to naming the defendant in their EEOC charge); *McAllister v. Price Rite, Inc.*, No. 3:09-CV-1888-VLB, 2012 WL 696125, at *3 (D. Conn. Mar. 1, 2012) (same). Accordingly, Johnson's Title VII claim against Tutera

is due to be dismissed without prejudice for failure to exhaust administrative remedies.

## V.  CONCLUSION

Based on the foregoing, it is ORDERED as follows:

(1)  Tutera's motion to dismiss (Doc. # 7) is DENIED as it relates to Johnson's § 1981 claim because Johnson has adequately pleaded an employment relationship with Tutera.

(2)  Tutera's motion to dismiss (Doc. # 7) is GRANTED as it relates to Johnson's Title VII claim because she failed to exhaust her administrative remedies, and this claim is dismissed without prejudice.

(3)  Johnson is GRANTED leave to file an amended complaint **on or before December 7, 2020**.  The amended complaint should contain allegations, to the extent they exist, demonstrating that the purposes of Title VII have been fulfilled despite Johnson not naming Tutera in her EEOC charge.

DONE this 23rd day of November, 2020.

              /s/ W. Keith Watkins
              UNITED STATES DISTRICT JUDGE